Cite as 2023 Ark. App. 281

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-1

| | |
|---|---|
| DAVID THOMAS AND CYNTHIA PARKER | **Opinion Delivered** May 17, 2023 |
| APPELLANTS | APPEAL FROM THE FULTON COUNTY CIRCUIT COURT [NO. 25CV-18-69] |
| V. | |
| ADAM GRAY; AMANDA COX; AND DOMINIQUE BELLES | HONORABLE LEE WISDOM HARROD, JUDGE |
| APPELLEES | AFFIRMED AS MODIFIED |

## BRANDON J. HARRISON, Chief Judge

This is an appeal from a dismissal with prejudice for want of service years into a lawsuit David Thomas and Cynthia Parker filed against Adam Gray, an emergency-room doctor at Fulton County Hospital, and Amanda Cox and Dominique Belles, two nurses who worked in the emergency department, for tortious conduct related to defendants' allegedly unfounded reports of elder abuse after Thomas's elderly aunt arrived at the emergency room on 9 January 2017.[1]  The essential facts—which every process server and civil practitioner should soberly digest—are these.

Plaintiffs' counsel filed suit and had summonses issued 6 June 2018.  He retained Charles Keesee to serve process.  By June 26, Keesee had returned proof of personal service

---

[1]Fulton County Hospital Foundation, Inc., which was alleged to operate the hospital, was also named.  The plaintiffs nonsuited their claims against it before the order on appeal was entered.  In this opinion, "defendant" or "defendants" means the appellee defendants.

on each defendant. Keesee had been serving process since 2012. He had been appointed in at least five counties. But in June 2018 he was not appointed, plaintiffs concede, in Fulton County, where service purportedly occurred. That appointment had expired. And some three years and six thousand service attempts later, when the defendants breathed life into their insufficient-service defense, Keesee could not say for sure whom he had served. This is important because the defendants swore by affidavit that he did not serve them. The circuit court found no service was made and granted their motions to dismiss with prejudice.

On appeal, plaintiffs argue the circuit court should have held that defendants were barred from presenting these no-service arguments. Alternatively, they argue that the circuit court should have dismissed without prejudice on these facts. We affirm as modified to dismiss without prejudice.

Our appellate courts review a circuit court's factual conclusions regarding service of process under a clearly erroneous standard, but when a complaint is dismissed on a question of law, we conduct a de novo review. *City of Tontitown v. First Sec. Bank*, 2017 Ark. App. 326, at 4, 525 S.W.3d 18, 21. Disputes over whether service was had raise questions of fact, and "the credibility of the evidence to rebut proof of service [is] a matter for the circuit court to decide." *Branson v. Hiers*, 2021 Ark. App. 284, at 6, 625 S.W.3d 748, 752 (citation omitted). We do not disturb a finding that service was (or was not) had unless we are "left with a definite and firm conviction that a mistake has been committed." *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, at 4, 489 S.W.3d 153, 156 (citations omitted).

If the insufficient-service defense was not preserved, as the appellants (the plaintiffs) say, then we need not determine whether the circuit court's dismissal should have been with or without prejudice. So we address that issue first, starting with more procedural facts.

All defendants filed timely answers. Dr. Gray filed on his own behalf; nurses Cox and Belles filed jointly with the hospital. All defendants expressly asserted insufficiency-of-service under Rule 12(b)(5). The nurses pleaded "insufficient process and insufficient service of process pursuant to Arkansas Rule of Civil Procedure 12(b)(4) and (5)" and, in the same paragraph, *moved for dismissal* of the complaint. Belt-and-suspenders. They also pleaded that the claims were barred by the statute of limitations. Dr. Gray pleaded that the plaintiffs' claims should be dismissed under Rule 12(b)(6) and "those additional defenses set forth in Rule 12(b) of the Arkansas Rules of Civil Procedure, including . . . insufficient service of process[.]"

In September and October 2018, the defendants filed Rule 12(b)(6) motions to dismiss with prejudice and supporting briefs. The lawsuit then proceeded through discovery and some additional motion practice for more than two years.

After the statutes of limitation had run, all defendants amended or supplemented their pending Rule 12 motions to fill out the insufficient-service defense they had pleaded. They stated in affidavits that they had not been served with process and, indeed, were not working at the hospital the day and time service was supposed to have been made. The plaintiffs opposed the motions with legal arguments but no new proof. Keesee supplied that through testimony at an April 2021 motion hearing. The defendants' counsel attended that hearing; the defendants themselves did not attend. The court took the matter under advisement.

In August 2021, the circuit court reconvened. It ruled from the bench, with admitted regret, that it would dismiss with prejudice because neither proper service nor any service had occurred, the case had not commenced, and the statute of limitations had run. It found the defendants had not waived service, and equitable estoppel and laches defenses did not apply. August 23, it entered an order consistent with its bench ruling dismissing with prejudice. Plaintiffs timely appealed.

Here, they first contend the defendants waived the service defense because they "attempt[ed] to shotgun the affirmative defenses" without stating why they thought service was defective. (Appt's Br. at 8). They rely on *Holliman v. Johnson*, 2012 Ark. App. 354, 417 S.W.3d 222. In *Holliman*, this court held that a defendant who pleaded that "this Complaint should be dismissed pursuant to Rule 12(b) of the Arkansas Rules of Civil Procedure" did not preserve the specific defenses under that rule, including insufficiency of service under Rule 12(b)(5). *Id.* at 9, 417 S.W.3d at 227. This record is not like *Holliman*. The defendants adequately provided notice of the insufficient-service defense. Of this there is no question.

Next, plaintiffs argue that through waiver, equitable estoppel, or laches, the defendants forfeited that defense. They rely solely on the defendants' conduct that transpired after the service attempt. In particular, the plaintiffs-turned-appellants complain that the defendants filed Rule 12(b)(6) motions to dismiss with prejudice in 2018, then waited years before springing the facts that supported their insufficient-service defense. A party can waive defenses to a court's jurisdiction (including insufficiency of service) by seeking affirmative relief from the court. *City of Tontitown*, 2017 Ark. App. 326, at 5, 525 S.W.3d at 22. But the test for waiver is "whether the defendant seeks affirmative relief, that is, whether the

4

pleading filed is more than a defensive action." *Farm Bureau Mut. Ins. Co. v. Campbell*, 315 Ark. 136, 141, 865 S.W.2d 643, 645 (1993). Moving to dismiss the plaintiff's claim is a defensive action, not a request for affirmative relief. *City of Tontitown*, 2017 Ark. App. 326, at 5, 525 S.W.3d at 22. As for the time that passed between when the insufficiency-of-service defenses were first asserted (2018) and when they were submitted for decision on the facts (2021), the passage of time alone does not "explode" a preserved defense. Our supreme court has cited the advent of the Arkansas Rules of Civil Procedure as a significant event that distinguished older cases that applied equitable doctrines to conduct during litigation. *See, e.g.*, *Raymond v. Raymond*, 343 Ark. 480, 486, 36 S.W.3d 733, 736 (2001); *Divelbliss v. Suchor*, 311 Ark. 8, 15, 841 S.W.2d 600, 603 (1992). Since the Rules came into effect, the court has entertained—but seemingly always rejected—arguments that equitable doctrines like estoppel or laches should prevent a defendant from raising a preserved insufficient-service defense because of a delay in pressing for a decision on the merit of the raised defense. *Wallace v. Hale*, 341 Ark. 898, 20 S.W.3d 392 (2000); *Campbell*, 315 Ark. at 141, 865 S.W.2d at 646.

There are two rule-based ways a party can forfeit an insufficient-service defense through acts or omissions in the proceedings. First, one could omit the defense from its answer, Ark. R. Civ. P. 12(h)(1)(B)—or plead it too generally, which is functionally the same as omitting it. *See Holliman*, 2012 Ark. App. 354, at 8, 417 S.W.3d at 226–27. That's Civ. Pro. 101 (or should be). But as we held above, the defendants in this case easily cleared that hurdle. More subtly, a party could also forfeit the defense by filing a motion under another provision of Rule 12: "If a party makes a motion under [Rule 12], but omits

5

therefrom any defense or objection then available to him [under Rule 12], he shall not thereafter make a motion based on the defense or objection so omitted." Ark. R. Civ. P. 12(g). But no Rule 12(g) hurdle, if there was one in these facts, was ever raised.

The circuit court did not err when it dismissed the complaint. But should the dismissal have been with or without prejudice? The bookend principles are easy: If a plaintiff sues within the limitation period and, in the time Ark. R. Civ. P. 4(i) requires, completes good service on the defendant, then the suit commences under Rule 3 and the limitations clock stops. These are so-called "good service" cases. If, however, the plaintiff neither completes nor attempts service in that time, then the suit must be dismissed, and the limitations clock keeps ticking. *Se. Foods, Inc. v. Keener*, 335 Ark. 209, 215, 979 S.W.2d 885, 888 (1998); *Green v. Wiggins*, 304 Ark. 484, 488, 803 S.W.2d 536, 538–39 (1991). These are what we call "no service" cases.

There is a third category, it seems, and in it the plaintiff completes service on the defendant, but either service (how do the required papers get to a person or entity) or process (are the papers that get to a person or entity proper in form and content) proves not to comply with Rule 4 when challenged. In what can be called "bad service" cases, the suit commences, but is dismissed without prejudice. Consequently, the plaintiff can refile and try again to achieve good service under the saving statute. Ark. Code Ann. § 16-56-126 (Repl. 2006).

Distinguishing between "bad service" cases and "no service" cases can be tricky. Our appellate courts have held, in a few opinions, that there was a "completed attempt at service." No opinion of which we are aware explains how to determine when a failed

6

service attempt is a "completed attempt" instead of "no service." It is a matter of degree and judgment. The cases do tend to combine an information gap about service-related facts at the time of service with a swearing match about those facts later.

For example, in *Jones v. Douglas*, plaintiffs' counsel sent process in 2008 by registered mail, return receipt requested, to the defendants' post office box in Costa Rica. 2016 Ark. 166, at 9, 489 S.W.3d 648, 654. The mail was returned stamped "rehusado"—Spanish for "refused."[2] At the time, service could be made "by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee." Ark. R. Civ. P. 4(d)(8)(A)(i) (2008). If the mail was refused, the plaintiff was required to "mail to the defendant by first class mail a copy of the summons and complaint and a notice that despite such refusal the case will proceed and that judgment by default may be rendered against him unless he appears to defend the suit." Ark. R. Civ. P. 4(d)(8)(A)(ii).

The defendants swore that their post office box was checked by a farm manager and that they did not refuse mailed service or authorize anyone else to refuse it. *Jones*, 2016 Ark. 166, at 9, 489 S.W.3d at 654. The circuit court found "no service" and dismissed with prejudice. *Id.* at 5, 489 S.W.3d at 651–52. Our supreme court held that the plaintiffs had "made a timely, completed *attempt* to serve appellees and should be afforded the benefit of the savings statute." *Id.* at 9, 489 S.W.3d at 654.

---

[2]This court's vacated opinion, *Jones v. Douglas*, 2015 Ark. App. 488, 470 S.W.3d 302, includes more detail about the record facts.

But compare *McCoy v. Robertson*, where service was likewise attempted by mail and fell on the "no service" side. 2018 Ark. App. 279, 550 S.W.3d 33. The plaintiff's attorney had sent process by certified mail to doctors at their hospital addresses. *Id.* at 5–7, 550 S.W.3d at 36–37. The doctors appeared and defended the litigation (affirmatively pleading insufficiency of service), but the plaintiff could produce no evidence that the doctors or their agents had refused or received the mail. *Id.* at 3, 13–14, 550 S.W.3d at 35, 41. We held that the circuit court correctly dismissed with prejudice. *Id.* at 16, 550 S.W.3d at 42. Unlike in *Jones*, the plaintiff in *McCoy* "had no reason to believe that service was complete." *Id.* at 15, 550 S.W.3d at 41.

In *White v. Owen*, a "completed attempt to serve" earned relief under the savings statute. 2021 Ark. 31, 617 S.W.3d 241. Personal service on the defendant in a motor-vehicle-accident suit was unsuccessfully attempted (in an extended Rule 4(i) service window) at four known addresses. *Id.* at 2, 617 S.W.3d at 243. The final, "complete" attempt to serve the defendant was made on the defendant's mother in February 2019 at her home address, which was listed on the collision report and the defendant's voter registration. *Id.* at 2–3, 617 S.W.3d at 243–44. Under the then current Rule 4, service could be made by "leaving the process with any member of the defendant's family at least 18 years of age at a place where the defendant resides." *Id.* at 7, 617 S.W.3d at 246 (quoting Ark. R. Civ. P. 4(f)(1)(B)). The defendant's mother either objected that he did not live there (as she swore in her affidavit)—or voiced no objection (as the process server swore in his). *Id.* at 2–3, 617 S.W.3d at 243–44. In any event, she accepted the papers. That was not good

service on the defendant—her home was no longer a "place where the defendant reside[d]" on that record—but it was a good attempt. *See id.* at 11, 617 S.W.3d at 247–48.

We discussed these service issues at length in *Harden v. Beck*, 2021 Ark. App. 481, 639 S.W.3d 401, an attempted-personal-service case. The defendant was not as footloose as in *White*, but what appeared to be good service fell apart later because of facts neither the plaintiff nor the process server could reasonably have been expected to know. The return-of-service indicated process for defendant Heather Beck was left with Paige Whitfield (age more than 14) at 51 Tate Levins Road—one trailer in a trailer court—where she resided with Beck. *Id.* at 2–3, 639 S.W.3d at 403–04. That was one of two addresses for Beck the process server had found. *Id.* at 3–4, 639 S.W.3d at 404. Both Beck and Whitfield later testified they had been living together in a romantic relationship at the time—but at 47 Tate Levins Road, a trailer one lot away they had rented the previous month. *Id.* at 4–5, 639 S.W.3d at 404–05. Both denied Whitfield was served (at either place), and Beck denied receiving process from Whitfield. *Id.* The circuit court noted Beck's lack of credibility, but dismissed the plaintiffs' claims with prejudice because it found the statute of limitations had run without proper service. *Id.* at 5–6, 639 S.W.3d at 405. We held the dismissal should have been without prejudice because "service was *attempted* and even completed on someone (who may or may not have been Whitfield) at 51 Tate Levins Road[,]" which was a sufficient attempt under the caselaw. *Id.* at 14–15, 639 S.W.3d at 410 (emphasis added).

Finally, there is *Clouse v. Ngau Van Tu*, 101 Ark. App. 260, 274 S.W.3d 344 (2008), a cornerstone though it speaks of "completed" service instead of a "completed attempt." *Clouse*, like *Harden*, involved process handed to the right person, but at the wrong place.

9

Service on Dr. Clouse, a chiropractor, was attempted at his office. *Id.* at 261, 274 S.W.3d at 344–45. Process was handed to Dr. Clouse's wife. *Id.* at 261, 274 S.W.3d at 345. We presumed that she lived with him, *id.* at 261, 274 S.W.3d at 345, and that serving her at their "dwelling place or usual place of abode" would have been good service then under Rule 4(d)(1). She also worked as Dr. Clouse's office manager. *Id.* The process server swore Mrs. Clouse claimed to be his registered agent too. *Id.* (Her affidavit was silent on that point.) But she was not Dr. Clouse's registered agent, so he could not be served through her at the office. We held that the case timely commenced, and the plaintiff was entitled to "the shelter of the saving statute." *Id.* at 267, 274 S.W.3d at 348.

We infer from these cases that the rule for distinguishing a "completed attempt at service" from "no service" is this: If a plaintiff should reasonably believe after service is attempted that at least defective service is complete, then there has been a "completed attempt at service"—and the action commences—even if, from the defendant's perspective, "no service" has occurred. We think this comports both with the General Assembly's intent "to protect those who, although having filed an action in good faith and in a timely manner, would suffer a complete loss of relief on the merits because of a procedural defect,"[3] and a pragmatic understanding of when and how service occurs. Typically, parties begin litigation with unequal access to facts that would determine whether service is "good" or complete. Discovery by compulsion is not immediately available; and it might not be realistic or desirable, where service on a defendant appears to be complete, to require plaintiffs to spend

---

[3]*Jones*, 2016 Ark. 166, at 8, 489 S.W.3d at 653 (quoting *Rettig v. Ballard*, 2009 Ark. 629, at 3–4, 362 S.W.3d 260, 262).

time repeating service attempts on the defendant, or prelitigating the particulars of a Rule 12(b) defense the defendant might waive.

In this case, process server Keesee could not testify with any certainty whom he had served on one June day nearly three years earlier; or so the circuit court was charged to decide and did, in a manner favorable to defendants. Keesee did not ask for their identification or see any nametags.[4] But he also said he took the papers to hospital administration and told them whom he needed to serve. The administration told him to go to the back side of the ER, and they would send Dr. Gray out. Keesee handed the papers to a man who came out. A woman in hospital administration said she was calling the defendants in to get the papers. Keesee handed her the other two sets of papers and stood there until she handed them off to people who came in to receive them. No more detail is known to us.

We cannot say the circuit court's finding that, on the facts, there was no service on the defendants was clear error, particularly because the circuit court could weigh Keesee's credibility as he testified. (To be clear, a no-service defense that prevails means the plaintiff's case was never properly commenced, at all, and that's why the saving statute cannot apply to that category of cases.) However, Keesee is the only witness who acknowledged being present for the service attempt. In the circumstances he described, he could reasonably have concluded that the three people who accepted process were the defendants and that service was complete. Under current precedent, we hold this case falls into the "completed attempt" line of cases, not the "no service" cases that the circuit court applied.

---

[4]Of course, good service can be made on someone who is not wearing a name tag.

Consequently, the savings statute applies, and the circuit court's dismissal should have been without prejudice.

Affirmed as modified.

GLADWIN and WOOD, JJ., agree.

*Richard E. Worsham*, for appellants.

*Carithers Johnson Devenport, PLLC*, by: *Kelly Carithers* and *Colin M. Johnson*, for separate appellee Adam Gray, M.D.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, and *Carson Tucker*, for separate appellees Amanda Cox and Dominique Belles.